UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRIS N.A., f/k/a HARRIS TRUST & SAVINGS BANK, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10 C 2352 ) |
| UNITED STATES OF AMERICA, EDWARD A. SCOTT, III, and LAURI E. SCOTT, | ) Judge Rebecca R. Pallmeyer ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Harris N.A. seeks to foreclose on a Barrington, Illinois home mortgaged by Edward and Lauri Scott, who it alleges have been in default since October 2009, and asks the court to order a judicial sale. The United States, which has a tax lien against the property, argues that a judge in a related proceeding within this district has prior exclusive jurisdiction, and that the property should be sold through a receiver. The court grants summary judgment to Harris N.A. and will enter a judgment of foreclosure to Harris N.A.

## BACKGROUND

Harris N.A. ("Plaintiff") brought this lawsuit pursuant to the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et seq,* in the Circuit Court of Cook County, on March 3, 2010, seeking to foreclose on property at 116 Coolidge Avenue in Barrington, Illinois. (Compl. at 2.) Edward A. Scott III and Lauri E. Scott ("Defendants"), the owners, mortgaged the property in January 1994 for $140,850. (*Id.*) They defaulted on the mortgage on October 1, 2009, and still owe Harris $99,428.48 in principal and $1,871.55 in interest, as well as approximately $400 in miscellaneous charges. (*Id.*) At the time Harris filed the foreclosure action, the United States held three tax liens against the Scotts in the aggregate amount of $304,893.01. (*Id.* at 3.) In addition to the Scotts, Harris named

the United States as a defendant, as well as "unknown owners and non-record claimants."[1] (Compl. to Foreclose Mortgage [1] at 1.)  On April 16, 2010, the United States removed the case to this court pursuant to 28 U.S.C. §§ 1444, 2410, allowing for removal of a foreclosure action in which the United States is named as a party.  (Notice of Removal [1].)  On July 16, 2010, Harris N.A. moved for summary judgment and a judgment of foreclosure.  (Mot. for Summ. J. [25].)

Defendants also face a separate action brought by the United States in the Northern District of Illinois on June 3, 2009, to recover back taxes.  A status report in that case suggests that the United States now asserts that the outstanding taxes owed are $117,270.00, but that amount remains disputed.  (No. 09-CV-3370, J. Status Report [58] at 2.)  No further court date is set until May 3, 2011.

I.   **Motion for Summary Judgment and Judgment of Foreclosure against Edward and Lauri Scott**

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant."  *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir.2009).

Plaintiff entered into an adjustable rate note and mortgage agreement with Defendants on January 13, 1994.  (Pl.'s 56.1 ¶ 12.)  Under the terms of these agreements, Defendants borrowed $140,850 and agreed to pay Plaintiff that amount, plus interest, in monthly installments.  (*Id.* ¶¶ 15, 17.)  Because they have failed to make payments since October 1, 2009, Plaintiff alleges they are in default and Plaintiff is entitled to foreclose.  (*Id.* ¶¶ 18, 21, 22, 24.)  Citing an affidavit of Adham Alaily, an attorney for Harris, Plaintiff asserts that the Scotts now owe $99,428.48 in principal and $1,871.55 in interest.  (Compl. at 2; Pl.'s 56.1, Ex. B at 1, 4.)  Defendants have asserted that they

---

[1] Publication notice was made to "unknown owners and non-record claimants" but none responded by July 12, 2010, the date specified in the publication by which claimants were asked to respond.  (Order for Publication [19].)

"lack sufficient knowledge to form a belief about the truth or accuracy of the amounts due as alleged," (Answer at 4), and have declined to respond at all to Plaintiff's motion for summary judgment.

The Illinois mortgage foreclosure law explains that when a party does not submit a verified answer denying the facts in the complaint, or if the party has stated that "it has no knowledge of such allegation sufficient to form a belief," then "a sworn verification of the complaint or a separate affidavit setting forth such fact is sufficient evidence thereof against such party and no further evidence of such fact shall be required." 735 ILCS 5/15-1506(a)(1). In these circumstances, the court may enter a judgment of foreclosure "upon motion supported by an affidavit stating the amount which is due the mortgagee . . . where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit." 735 ILCS 5/15-1506(a)(2).

The Scotts' only affirmative defense to the complaint lacks merit: The Scotts asserted that Plaintiff lacks standing because the party named in the complaint is Harris N.A., while the mortgage they signed was with Harris Bank Barrington N.A., and was later assigned to Harris Trust and Savings Bank. (Answer at 5.) Harris has since updated its filings to show that it was formerly known as Harris Trust and Savings. (Pl.'s Br. at 7; Minute Order [24].) Plaintiff has set forth its allegations in a sworn and verified complaint. Defendants have not denied the amount owed, nor supported their claimed lack of sufficient knowledge to respond with an affidavit or other evidence. The court concludes that Plaintiff has met the standard for summary judgment against Defendants and will enter a judgment of foreclosure.

## II. Motion for Summary Judgment Against the United States

The United States opposes Plaintiff's motion for summary judgment. Although the government never moved to dismiss the foreclosure action in this court, it contends, in response to summary judgment, that the judge presiding over the government's tax action has prior exclusive jurisdiction over the property. The United States opposes a judicial sale of the property on the

3

ground that such a sale would result in a reduced recovery for the government's subordinate lien. The United States also argues its federal tax liens are entitled to priority over Plaintiff's attorneys' fees.

  **A.**  **Prior Exclusive Jurisdiction**

As noted, the United States filed suit to collect back taxes in June 2009. On October 13, 2009, the government amended its complaint in that action to seek enforcement of the tax liens against the property and to name Harris as a defendant entitled to a share of the proceeds from enforcement of the lien. (Response at 4.) The United States argues that because it amended the complaint before Plaintiff filed this foreclosure action on March 12, 2010, Plaintiff was required to bring its foreclosure claim action as a counterclaim and cross-claim in that action. (*Id.* at 2-3.) Plaintiff responds that "the United States['] interpretation of prior exclusive jurisdiction does not have legal support." (Reply at 2.) Specifically, Plaintiff argues that because both cases are pending in this district court, there is no issue regarding exclusive jurisdiction.

The only case the United States cites regarding the application of the prior exclusive jurisdiction doctrine to federal tax lien foreclosure actions is *United States v. Comer,* No. 95-CV-76538-DT, 2000 WL 1358677 (E.D. Mich. July 5, 2000). "The government asserts, and the court agrees, that this court has prior exclusive jurisdiction over the res in this case. Once property is brought under the jurisdiction of a federal court, state courts cannot properly exercise control over it." *Id.* at *2. The doctrine of prior exclusive jurisdiction is, as the United States points out, well-established. *See, e.g., Heidritter v. Elizabeth Oil-Cloth Co.*, 112 U.S. 294, 302 (1884) ("[T]he court had taken possession of the property itself, and that possession was necessarily exclusive."). Put simply, in a case involving the disposition of property, the first court to assert jurisdiction ordinarily maintains exclusive jurisdiction over that property. *Kline v. Burke Const. Co.,* 260 U.S. 226, 231 (1922) ("'It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the

4

other, until its duty is fully performed, and the jurisdiction involved is exhausted.") (quoting *Baltimore & Ohio Railroad Co. v. Wabash Railroad Co.,* 119 F. 678, 679 (7th Cir. 1902)).

The rationale underlying this doctrine is based on "[t]he logical and practical difficulty of two courts simultaneously vying for possession or control of the same property. . . ." *United States v. $79,123.49 in U.S. Cash and Currency*, 830 F.2d 94, 91 (7th Cir. 1987). Here, however, two courts are not vying for possession or control of the same property–both actions are in the Northern District of Illinois. More importantly, the United States and Plaintiff do not disagree on the disposition of the property, they disagree only about the manner of its disposition. "[T]he United States does not dispute Harris N.A.'s right to have the property sold and be paid from the proceeds." (Response at 8.) The United States would like a receiver appointed, while Harris would like the property to be subject to a judicial sale. Resolution of this dispute, in the court's view, would not run afoul of any exclusive jurisdiction principles.

**B.    Private Sale or Judicial Sale**

The United States asks the court to appoint a receiver to sell the property pursuant to 26 U.S.C. §§ 7402(a) and 7403(d). (Response at 5.) Section 7402(a) provides that in a civil action brought by the United States, the district court "shall have such jurisdiction to make and issue . . . orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Section 7403(d) provides that "the court may appoint a receiver to enforce the [tax] lien." 26 U.S.C. § 7403(d).

Notably, nothing in the language of these statutes requires the court to appoint a receiver, nor does the United States argue that any statute or any other authority requires the court to appoint a receiver rather than proceed with a judicial sale. The United States instead warns that "Harris N.A. seeks to sell the property in a judicial fire sale which would likely result in a deeply discounted price which may end up stripping the rights of the United States with no surplus

5

proceeds for the tax lien." (Response at 6.) The United States argues that, according to Zillow.com, a site featuring real estate listings and home value information, the fair market value of the property is $250,500, but "Harris N.A. has no incentive to sell the property for any more than the balance of its mortgage, $104,1644.36." (*Id.*)

As Plaintiff observes, the United States can protect itself against the potential losses resulting from a "fire sale": should the United States believe the home will sell for less at a judicial sale than it is worth, the United States will be entitled to bid on the home and resell it to "extract the alleged equity from the property, just as it would from a private sale." (Reply at 5-6.) Further, Plaintiff notes, the only support the United States cites for its contention that a private sale would be more profitable is a "casual reference to Zillow.com." (*Id.* at 6.) In any event, the private sale proposed by the United States would be impractical. The court agrees with Plaintiff that "if a private sale were to be authorized, Harris would be required to wait indefinitely for the property to be sold. In the present real estate market, this could take months, or even years." (*Id.* at 4.)

Whatever the practical implications might be, the court notes that the foreclosure and sale procedures are governed by statute. Curiously, neither party has cited the relevant provisions. The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1107(a), governs the substance of this proceeding, but federal law governs disposition of the property following enforcement of the government's lien. The law governing the United States' removal of this action to federal court provides that

> [a] judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, *must seek judicial sale*.

28 U.S.C. § 2410(c) (emphasis added). This provision is routinely honored. *See e.g.*, *Kona Properties, LLC v. United States,* No. WDQ-08-1010, 2009 WL 2366561, at *2 (D. Md. July 30, 2009) ("Under § 2410(c), the United States consents to suits to foreclose a mortgage or other lien

6

only when the plaintiff also seeks a judicial sale."); *State of Montana v. United States*, No. CV 91-95-BLG-RWA, 1995 WL 376538, at *7 (D. Mont. Oct. 7, 1993) ("While Section 2410 allows suit against the United States to foreclose a mortgage or other lien upon personal property in which the United States claims an interest, it pointedly requires that the foreclosing party must seek a judicial sale."); *United States v. Perpetual Help's Boys Home,* 451 F. Supp. 270, 273 (E.D. Wis. 1978) ("Since the plaintiff has not sought judicial sale, her action is barred against the United States.").

Section 2410(c) might be read to suggest that the party seeking to foreclose must seek a judicial sale, while the United States is free to seek a private sale. As the court reads the statute, however, it establishes a strong presumption, if not a binding requirement, in favor of a judicial sale of the property. Harris's foreclosure action in this case has been delayed by substitution of counsel for the United Sates in this and the related action, and is ripe for decision. (Dkt. 34 at 2.) Finally, the court takes judicial notice that foreclosure actions in which the United States is a party because of tax liens are exceedingly common, and the government rarely, if ever, objects to a judicial sale. The court orders a judicial sale of the property and grants Plaintiff's motion to appoint a judicial selling officer [29] pursuant to 735 ILCS 5/15-1506(f).

### C. Attorney's Fees

Plaintiff asserts that the Scotts are required by the terms of their mortgage to pay the attorney's fees and other expenses associated with the foreclosure action, a total of $6,324.90. (Pl.'s 56.1 ¶ 38.) The United States argues that these expenses should not take priority over the federal tax liens because they are not reasonable under 26 U.S.C. § 6323(e)(3), which requires that the same priority given to a superior lien or security interest extend to "the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collecting or enforcing the obligation secured." The United States maintains that the expenses are not reasonable because Plaintiff is a party to the related tax lien litigation, and that reasonable expenses should be limited to what would have been incurred by participating in that prior action. (Response at 2.) Because

7

this foreclosure action is "wholly unnecessary," the United States urges the expenses are not reasonable. (*Id.* at 3.) The United States also noted that it "offered to not oppose the attorney's fees thus far incurred by the bank in this action if the bank would support the appointment of a real estate agent as a receiver." (Response at 2.)

The government's objection to Plaintiff's claim for attorneys' fees is overruled. As Plaintiff notes, it is not clear why the Scotts' mortgage lender was named in the government's action against the Scotts, and Plaintiff was compelled to wait while the United States prosecuted that action before finally deciding to bring this foreclosure action. (Reply at 6-7.) Thus, the government's own conduct generated attorney effort, and there is no reason to believe that the attorneys' fees and expenses would have been minimized had Plaintiff filed its foreclosure action as a cross-claim or counterclaim instead of as a separate lawsuit. (*Id.*) The court agrees that given the delays in this and the related case brought about by the United States, the lack of significant duplication of efforts as a result of filing the separate foreclosure action, and the relatively modest amount requested, Plaintiff's attorneys' fees and expenses are reasonable and take priority over the subordinate tax liens.

## **CONCLUSION**

The court grants Plaintiff's motion for summary judgment against Defendants and the United States [25] and grants Plaintiff's motion of foreclosure [25]. The court also grants Plaintiff's motion to appoint a selling officer [29]. Plaintiff is invited to submit an appropriate foreclosure judgment order within 14 days.

ENTER:

Dated: March 4, 2011

REBECCA R. PALLMEYER
United States District Judge